UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

KHALED MAHMOUD,

                                        Plaintiff,        **<u>COMPLAINT</u>**

                    -against-

THE CITY OF NEW YORK; SGT. DOMINICK
GIARRANTANO, Shield # 4915; P.O. HANS LUZO, Shield        ECF Case
# 4103; and P.O. JACQUELINE MENTALBAN, Shield #
9945, the individual defendant(s) sued individually and in        <u>Jury Trial Demanded</u>
their official capacities,

                                        Defendants.

------------------------------------------------------------------------X

<u>PRELIMINARY STATEMENT</u>

      1.     This is a civil rights action in which plaintiff seeks relief for the violation of plaintiff's rights secured by 42 U.S.C. § 1983, the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution, and the State of New York.  Plaintiff's claims arise from an incident commencing on or about June 20, 2014 and ended on February 17, 2015. During the incident, the City of New York, and members of the New York City Police Department ("NYPD") subjected plaintiff to, among other things: false arrest; unreasonable force; failure to intervene; malicious prosecution; denial of a fair trial/fabricated evidence; retaliation; and respondeat superior liability.  Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, pursuant 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

**JURISDICTION & VENUE**

2.    This action is brought pursuant to 42 U.S.C. § 1983, and the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

3.    Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law regarding his malicious prosecution, which terminated on February 17, 2015.  Plaintiff's notice of claim was duly filed on defendant City of New York within 90 days of the incident at issue, and more than 30 days have elapsed since such filing and the City of New York has refused to settle plaintiff's claims.  Moreover, this action has been filed within one year and 90 days of the dismissal.  Plaintiff has satisfied all conditions precedent for the filing of this action, including attending a N.Y.S. G.M.L. § 50-H hearing on July 13, 2015.

4.    Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in New York County, and the City of New York is subject to personal jurisdiction in the Southern District of New York.

**PARTIES**

5.    Plaintiff Khaled Mahmoud is a resident of the State of New York, Richmond County.

6.    At all times herein, defendant City of New York was a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

7.    At all times alleged herein, defendants Sgt. Dominick Giarrantano, Shield # 4915, P.O. Hans Luzo, Shield # 4103, and P.O. Jacqueline Mentalban, Shield # 9945, were

2

New York City police officers employed with the 5th Precinct, located in New York County,

New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as

described herein.

      8.     The individual defendants are sued in their individual and official

capacities.

## STATEMENT OF FACTS

      9.     Prior to Mr. Mahmoud's arrest on June 20, 2014, Mr. Mahmoud had

operated his licensed food cart on the sidewalk outside of 199 Bowery, New York, New York, an

area where licensed food venders may do business.

      10.     On these prior occasions, Mr. Mahmoud had operated his licensed food

cart at the hour of 3:15 a.m. on the sidewalk outside of 199 Bowery, New York, New York, a

time when licensed food venders may do business at that location.

      11.     During these prior occasions, Mr. Mahmoud carried in his food cart: fuel,

food, beverages, packaging and customary equipment and tools, including kitchen utensils

customarily used to prepare food.

      12.     On several occasions prior to June 20, 2014, Sgt. Giarrantano shut down

Mr. Mahmoud's food cart without cause or authority.

      13.     During these occasions, Sgt. Giarrantano did not arrest or issue Mr.

Mahmoud with a ticket, but made him close his food cart and threatened to arrest him.

      14.     On these occasions, Mr. Mahmoud told Sgt. Giarrantano that he was

permitted to operate his food cart, but Sgt. Giarrantano said he did not care.

      15.     On these prior occasions, Mr. Mahmoud had not violated any law, statute

or regulation regarding the operation of his food cart.

3

16.     On June 13, 2014, Mr. Mahmoud went to the 5th Precinct and made a complaint to Sgt. Mienert about Sgt. Giarrantano illegally shutting down his food cart.

17.     On June 19, 2014, Mr. Mahmoud followed up and made a complaint to Sgt. Yapp about Sgt. Giarrantano illegally shutting down his food cart.

18.     Upon information and belief, the New York City Civilian Complaint Review Board received and reviewed the complaints.

19.     On June 20, 2014, at and in the vicinity of 199 Bowery, New York, New York, and the 5th Precinct, several police officers operating from the 5th Precinct, including Sgt. Giarrantano, P.O. Luzo, and P.O. Mentalban, at times acting in concert and at times acting independently, committed the following illegal acts against Mr. Mahmoud.

20.     On June 20, 2014, at approximately 3:15 a.m. at and in the vicinity of 199 Bowery, New York, New York, defendants Sgt. Giarrantano and P.O Luzo without either consent, an arrest warrant, search warrant, probable cause, or reasonable suspicion that Mr. Mahmoud (or any third person) had committed a crime unlawfully arrested Mr. Mahmoud.

21.     On June 20, 2014 at approximately 3:15 a.m., Mr. Mahmoud was lawfully operating his food cart on the sidewalk outside 199 Bowery, New York, New York.

22.     On June 20, 2014, Mr. Mahmoud's New York City Mobile Street Vendor license was in effect.

23.     On June 20, 2014, Mr. Mahmoud's food cart was in compliance with all applicable laws, regulations and administrative codes, and he carried in his food cart: fuel, food, beverages, packaging and customary equipment and tools, including kitchen utensils customarily used to prepare food.

4

24.     Mr. Mahmoud was selling hot dogs, rice, shish kebab, soda, water and similar items.

25.     Sgt. Giarrantano and P.O Luzo drove to 199 Bowery, New York, New York.

26.     Sgt. Giarrantano and P.O Luzo left their car and confronted Mr. Mahmoud while he was working at his food cart.

27.     Sgt. Giarrantano told Mr. Mahmoud that he knew that Mr. Mahmoud had made complaints against him and now he was going to arrest Mr. Mahmoud.

28.     Mr. Mahmoud complained to the officers that he was not a criminal, that he was just selling food to customers, and when he tried to continue working Sgt. Giarrantano and P.O Luzo forced him to the ground.

29.     Sgt. Giarrantano and P.O Luzo handcuffed Mr. Mahmoud and placed knees in his back causing him pain.

30.     Bystanders questioned the officers about their conduct.

31.     Other police officers joined Sgt. Giarrantano and P.O Luzo, as Mr. Mahmoud lay on the ground and took part in detaining him.

32.     The police eventually took Mr. Mahmoud to the 5th Precinct.

33.     At the precinct, Mr. Mahmoud contacted his family to pick up his food cart.

34.     At the 5th Precinct, Mr. Mahmoud learned that Sgt. Giarrantano and P.O Luzo were concocting a story that he had tried to assault them with a knife.

35.     The police processed Mr. Mahmoud's arrest and brought him to Manhattan Central Booking where he was held.

5

36.     In order to cover up their illegal actions, Sgt. Giarrantano and P.O Luzo with the assistance of P.O. Mentalban (who signed the misdemeanor complaint based on information Sgt. Giarrantano and P.O Luzo provided to her), pursuant to a conspiracy, falsely and maliciously told the New York County District Attorney's Office that Mr. Mahmoud had committed various crimes.

37.     The police officer defendants made these false allegations, despite the fact that Mr. Mahmoud had committed no crime.

38.     Mr. Mahmoud was falsely charged with Menacing in the Second and Fourth Degrees, Criminal Possession of a Weapon in the Fourth Degree, Obstructing Governmental Administration in the Second Degree, Criminal Possession of Knives or Dangerous Instruments, and Possession of a Knife Worn Outside Clothing.

39.     In the misdemeanor complaint, P.O. Mentalban alleged that Sgt. Giarrantano informed her that: "[he] observed the defendant standing in front of his food vending truck with heated grill which he parked in the middle of the sidewalk near a crowd of approximately 50 to 70 people."

40.     P.O. Mentalban further alleged that Sgt. Giarrantano informed her that: "[he] ordered the defendant to move his truck out of the middle of the sidewalk."

41.     P.O. Mentalban further alleged that Sgt. Giarrantano informed her that: "[he] observed the defendant holding a knife with a blade approximately 7 inches in his hand while stating in sum and substance to the sergeant, 'I'm not moving.  I need to feed my family. What are you going to do?  Arrest me?  I'm not moving."

42.     P.O. Mentalban further alleged that P.O. Luzo informed her that: "he took a knife with a blade of approximately 7 inches from the counter of the food truck where he observed the defendant place it."

43.     After many hours, Mr. Mahmoud was arraigned at Manhattan Criminal Central Booking and released on his own recognizance.

44.     Mr. Mahmoud was required to return to criminal court to defend the false charges.

45.     An investigator, hired by an attorney Mr. Mahmoud retained, located and filmed surveillance footage regarding the incident showing Mr. Mahmoud at work, and Sgt. Giarrantano and P.O Luzo arresting Mr. Mahmoud.

46.     These recording were provided to Mr. Mahmoud's defense attorney.

47.     Stills of the recordings are attached hereto at Exhibit 1.

48.     The recordings shows that Mr. Mahmoud's food cart was parked at the curb and that there was no crowd.

49.     The recordings show that Mr. Mahmoud did not act, or use any knife, in a manner that was unlawful.

50.     The District Attorney's Office learned of this evidence.

51.     On February 17, 2015, the District Attorney's Office dismissed the case against Mr. Mahmoud in its entirety, and the case terminated in his favor.

52.     Plaintiff was depressed, humiliated and embarrassed by the experience.

53.     Plaintiff was physically injured.

54.     The experience has caused him to feel that he could be arbitrarily arrested for just working at his trade.

55.     Plaintiff suffered financial loss.

56.     Plaintiff suffered a post arraignment restraint on his liberty.

**General Allegations**

57.     The individual defendants acted in concert in committing the above-described illegal acts against plaintiff.

58.     Plaintiff did not resist arrest at any time during the above-described incidents.

59.     Plaintiff did not violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above-described incident.

60.     The individual defendants did not observe plaintiff violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above-described incident.

61.     The individual defendants acted under pretense and color of state law and their individual and official capacities and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of this rights.

62.     As a direct and proximate result of defendants' actions, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation and financial loss.

63.     Plaintiff is entitled to receive punitive damages from the individual defendants because the individual defendants' actions were motivated by extreme recklessness and indifference to plaintiff's rights.

## FIRST CLAIM

### (FALSE ARREST UNDER FEDERAL LAW)

64.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

65.     Defendants falsely arrested plaintiff without consent, an arrest warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

66.     Accordingly, defendants are liable to plaintiff for false arrest under 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

## SECOND CLAIM

### (UNREASONABLE FORCE)

67.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

68.     The individual defendants' use of force upon plaintiff was objectively unreasonable.

69.     The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiff.

70.     Accordingly, the defendants are liable to plaintiff for using unreasonable force, pursuant to 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

9

## THIRD CLAIM

### (MALICIOUS PROSECUTION UNDER FEDERAL LAW)

71.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

72.     The individual defendants are liable to plaintiff for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated a malicious prosecution(s) against plaintiff by knowingly, intentionally, and maliciously providing false statements in complaints and police reports to police officers, prosecutors and/or the court(s), which alleged plaintiff had committed various crimes.

73.     The individual defendants lacked probable cause to believe the above-stated malicious prosecution could succeed.

74.     The individual defendants initiated the above-stated malicious prosecution to cover up their illegal and unconstitutional conduct.

75.     The above-stated malicious prosecution caused a sufficient post-arraignment liberty restraint on plaintiff.

## FOURTH CLAIM

### (MALICIOUS PROSECUTION CLAIM UNDER STATE LAW)

76.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

77.     The individual defendants are liable to plaintiff for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated a malicious prosecution(s) against plaintiff by knowingly, intentionally, and maliciously providing false

statements in complaints and police reports to police officers, prosecutors and/or the court(s), which alleged plaintiff had committed various crimes.

78.     The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

79.     The individual defendants acted to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

## FIFTH CLAIM

## (DENIAL OF A FAIR TRIAL/FABRICATION OF EVIDENCE)

80.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

81.     The individual defendants are liable to plaintiff because they intentionally conspired to fabricate evidence against plaintiff, including omitting and/or manipulating evidence, and suppressing exculpatory evidence and forwarded that false evidence to police officers, prosecutors, and the court.

82.     The individual defendants violated the law by either testifying falsely, providing false information, and/or drafting and signing false criminal court complaints and/or false police reports and forwarding them to police officers, prosecutors and the court.

83.     The individual defendants were on notice that creating fabricated evidence is a clear violation of law because it is well established that individuals who knowingly use false evidence to obtain a conviction act unconstitutionally, depriving plaintiff of liberty without due process of law or a fair trial, and the harm occasioned by such unconscionable actions are redressable in an action for damages under 42 U.S.C. § 1983, the Fair Trial Clause of the Sixth

Amendment to the United States Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## SIXTH CLAIM

### (RETALIATION)

84.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

85.     Plaintiff exercised free speech by, making complaints against Sgt. Giarrantano on June 13, 2014 and June 19, 2014 at the 5th Precinct for illegally shutting down his food cart.

86.     Plaintiff's use of free speech was a motivating factor in Sgt. Giarrantano's decision to arrest and prosecute him.

87.     Plaintiff's filing of complaints against a police officer for an alleged abuse of authority or misconduct was a protected activity.

88.     Accordingly, defendants are liable to plaintiff under the First Amendment to the United States Constitution for violating plaintiff's right to free speech.

## SEVENTH CLAIM

### (FAILURE TO INTERVENE)

89.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

90.     Defendants had a reasonable opportunity to prevent the violations of plaintiff's constitutional rights, but they failed to intervene.

91.     Accordingly, the defendants are liable to plaintiff for failing to intervene to prevent the violation of plaintiff's constitutional rights.

12

## EIGHTH CLAIM

### (RESPONDEAT SUPERIOR)

92.     Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

93.     The individual defendants were acting within the scope of their employment as New York City Police Officers when they committed the above described acts against plaintiff, including maliciously prosecuting plaintiff.

94.     The City of New York is therefore vicariously liable under New York State law for the aforesaid torts.

**WHEREFORE**, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.      Compensatory damages in an amount to be determined by a jury;

b.      Punitive damages in an amount to be determined by a jury;

c.      Costs, interest and attorney's fees, pursuant to 42 U.S.C. § 1988; and

d.      Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:      Brooklyn, New York
March 11, 2016

MICHAEL O. HUESTON, ESQ.
*Attorney for Plaintiff*
16 Court Street, Suite 3301
Brooklyn, New York 11241
(718) 246-2900
mhueston@nyc.rr.com
By:

____s/_____
MICHAEL O. HUESTON